Affirmed and Memorandum Opinion filed June 17, 2010.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-00435-CR

NO. 14-09-00436-CR

____________

 

LEE EDWARD ST. ROMAIN, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause Nos. 1126583, 1126584

 



 

MEMORANDUM
OPINION

Appellant entered a plea of guilty to possession of a
controlled substance, trial court cause number 1126583 (appeal number 14-09-00435-CR)
and possession of a short- barreled firearm, trial court cause number 1126584 (appeal
number 14-09-00436-CR).  In both cases, the trial court deferred adjudicating
guilt and placed appellant on community supervision.  The period of community
supervision was for two years in trial court cause number 1126583, and for five
years in trial court cause number 1126584.  Subsequently, the State filed a
motion to adjudicate guilt in both cases.  Following a hearing, the trial court
found the allegations true and proceeded to adjudicate guilt in both cases.  The
trial court sentenced appellant to confinement for two years in the State Jail Division
of the Texas Department of Criminal Justice in trial court cause number 1126583,
and for eight years in trial court cause number 1126584, to run consecutively. 
Appellant filed a timely notice of appeal in both cases.

In his sole issue, appellant claims the trial court abused
its discretion because the State did not establish by a preponderance of the
evidence that he violated his conditions of community supervision.  The record
reflects the State moved to adjudicate guilt on three grounds.  First, the
State claimed appellant committed an offense against the State of Texas in that
he assaulted Jeannette Jacoway.  Second, the State asserted appellant failed to
maintain financial responsibility in that he failed to provide proof of financial
responsibility.  Third, the State alleged appellant had contact with Jeannette
Jacoway.  The trial court found all three allegations true. 

STANDARD OF
REVIEW

The trial court's decision to adjudicate guilt on the
original charge “is reviewable in the same manner as a revocation hearing
conducted under Section 21 of this article in a case in which an adjudication
of guilt had not been deferred.”  Tex. Code Crim.
Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2009).  Accordingly, we review
the trial court’s order for abuse of discretion.  See Forrest v. State,
805 S.W.2d 462, 464 (Tex. Crim. App. 1991).  

The trial court’s order must be supported by a preponderance
of the evidence.  See Maxey v. State, 49 S.W.3d 582, 584 (Tex. App. -- Waco
2001, pet. ref’d) (citing Scamardo v. State, 517 S.W.2d 293, 298 (Tex. Crim.
App. 1974)).  This standard is met when the greater weight of the credible
evidence creates a reasonable belief the defendant has violated a condition of
his community supervision.  See Rickels v. State, 202 S.W.3d 759, 764
(Tex. Crim. App. 2006).  We view the evidence presented in the light most
favorable to the trial court's decision.  Liggett v. State, 998 S.W.2d
733, 736 (Tex. App. -- Beaumont 1999, no pet.) (citing Garrett v. State,
619 S.W.2d 172, 174 (Tex. Crim. App. 1981)).  The State is required to sustain
the burden of proving the alleged violations.  See Cobb v. State, 851
S.W.2d 871, 873 (Tex. Crim. App. 1993).  Violation of a single condition of community
supervision will support the trial court’s decision to adjudicate guilt.  See
Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980).  The trial
court is the sole fact-finder and the exclusive judge of the witnesses’
credibility and the weight to be given their testimony.  See Garrett,
619 S.W.2d at 174.  The trial court resolves conflicts in the evidence and may
choose to believe or disbelieve any or all of the witnesses’ testimony.  See
Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

THE TESTIMONY

Martin Guzman, community supervision officer for Harris
County, testified he assumed supervision of appellant’s case in December 2007. 
On July 22, 2008, Guzman was informed appellant had violated the law and went
to appellant’s home on Brockington Drive.  Guzman spoke with appellant’s
mother; she called appellant and he arrived shortly thereafter.   Guzman
informed appellant there was a warrant for his arrest and appellant acted
surprised.  Guzman told appellant his girlfriend had been assaulted, but
appellant denied any involvement.  Guzman did not take appellant into custody.

Mark Palmer, a firefighter/paramedic with the Westlake Fire
Department and Houston Fire Department, testified he responded to an assault
call at 4: 39 p.m. on July 22, 2008, on Ruble Street.  They arrived at 4:43
p.m. and Jeanette Jacoway opened the door, holding her bloody nose.  She was
upset and crying.  Jacoway told Palmer she was assaulted by her boyfriend, who
was at the house earlier.  Jacoway also told Palmer her dog had stepped on her
foot and taken off outside.  She asked Palmer to help look for the dog.   Palmer
testified there was blood on the floor inside the house.  After the bleeding on
her nose was controlled, Jacoway was taken to the hospital.  Palmer testified
Jacoway smelled of alcohol.

Officer Colin McHugh of the Harris County Sheriff’s Office
was called to the hospital to photograph an assault victim on July 22, 2008. 
Officer McHugh recognized Jacoway, having met with her before as a victim.  He
testified she was intoxicated and began crying when she saw him.  Officer
McHugh developed appellant as a suspect.  Officer McHugh was aware that
appellant and Jacoway were common-law spouses.   Officer McHugh acknowledged
his history with appellant and Jacoway concerned the two cases for which
appellant was placed on deferred adjudication.  He had been to the house on
Ruble Street twice before, once for an aggravated assault with a deadly weapon,
shots fired; and again with Jacoway after a terroristic threat.  In both those
cases, Jacoway was the victim and appellant the suspect.

That same day, Officer McHugh went to Jacoway’s and spoke to
neighbors.  He asked if any black men were seen in the neighborhood because
Jacoway had told Deputy Garza she was attacked in her yard by black men. 
Officer McHugh testified Jacoway told him that appellant was living in the
house with her on Ruble Street.  He also testified the next-door neighbor told
him appellant stayed on Ruble Street.  Officer McHugh knocked on the door and
heard a male voice from inside the house.  No one would open the door. 
Neighbors told the officers, “He’s in the house.  I just saw him in the front
yard.”

  The next day, officers went back to Ruble Street with a
warrant.  Officer McHugh testified Jacoway “said she didn’t want him to go to
prison.  He would go to prison if she told me the truth.”  Officer McHugh testified
Jacoway was talking about appellant and was trying to protect him.  Jacoway
also told Officer McHugh that it was one black man, then two, and then three
black men that attacked her.  At the hospital, Jacoway never said anything to
Officer McHugh about her attackers being black men.

Jeanette Jacoway testified she lived with appellant from
January 2007 until July 2007.  They stopped living together after an incident
in July 2007, because of a court order.  Jacoway said she had no contact with
appellant since July 2007 and he had not been to the house on Ruble Street. 
Jacoway testified that on July 22, 2008, two black men assaulted her.  Jacoway
claimed she was watering her yard when they drove up in an SUV and asked for
appellant.  Jacoway thought they wanted to buy a car she was selling.  When she
tried to enter the house, they pushed the door open and the taller one punched
her.  

Jacoway did not recall telling Palmer it was her boyfriend
that hit her in the nose.  She also did not recall telling him the dog stepped
on her foot and asking him to help find the dog.  Jacoway denied telling
Officer McHugh that appellant assaulted her.  She claimed she told him two
black men assaulted her, appellant was nowhere near her, and that appellant was
on probation.  Jacoway’s medical records contained the notation “punched in the
nose by her boyfriend.” Her medical records also show medical personnel
overheard her say two black men assaulted her.  

The defense presented a number of witnesses to testify that
appellant was not at the house on Ruble Street on the day in question.  His
sister, Lisa Gregg, testified appellant was with her that day, running errands,
until they returned home around 3:30 p.m.  Their mother, Barbara St. Romain,
and a neighbor, Wynonna Keats, were there.  At 4:00 p.m., she and appellant
went to pick up her son, Nathan, from summer league basketball.  They returned
home at approximately 4:20 p.m.  Her other sons, Anthony and Ryan, were also
home by then.  They were all home the rest of the evening.  Lisa testified
appellant was not out of her presence long enough to drive to Ruble Street. 
She also testified he does not drive either of the two vehicles at the home,
which belong to her and her mother, because he is not insured.  Lisa testified
she is aware appellant is on probation for possession of a prohibited weapon
and that he threatened to kill Jacoway with a sawed-off shotgun.

The testimony of Barbara St. Romain, appellant’s mother, was
consistent with Lisa’s.  She testified appellant does not drive.  Barbara said Lisa
and appellant arrived home around 3:30 p.m., left about 4:00 p.m. to pick up
Nathan, and after they got home appellant did not leave the house again. 
Barbara testified appellant has his own car, but never drives it because it is
not inspected and he does not want to drive.  She stated appellant was arrested
on the 23rd.  According to Barbara, Guzman was at the house on the 23rd.

Wynonna Keats, a neighbor, testified Lisa and appellant had
just driven up when she crossed the street to visit Barbara St. Romain, around
3:30 p.m. on July 22, 2008.  She said they only left once, to pick up Nathan. 
Appellant parks his car at her house.  Keats testified she has ridden with
appellant in the car, but the last time was over a year ago and she has not recently
seen him drive the car.  She estimated it would take 45 minutes to drive from
the house on Brockington to Ruble Street.

Nathan Gregg testified that on July 22, 2008, his mother and
appellant picked him up from basketball, it was sometime between 4:10 and 4:20
p.m.  They went home and appellant did not leave the house again.  Ryan Gregg
testified when he woke up on the morning of July 22, 2008, his mother and
appellant were gone.  They returned around 3:30 p.m. and left again to pick up
his brother.  They were gone about 15 minutes.  Appellant did not leave the
house again.  Keatin Mawhood, a friend of Nathan’s, testified that on July 22,
2008, he brother Ashton drove him to Nathan’s house; they arrived around 4:40
to 4:50 p.m.  Appellant was at the house.  Keatin spent the night, and to his
knowledge appellant never left the house.  The State stipulated that Ashton
Mawhood would testify that when he dropped his brother off at 4:50 p.m., he saw
appellant in the front yard.  The State also stipulated that Randall Haynes, a
neighbor, would testify he arrived home around 5:50 p.m. and appellant was at
the residence at that time.

Appellant testified on July 22, 2008, he was running errands
with his sister until about 3:10 p.m., when they went home.  They left to pick
Nathan up but, other than that, he did not leave the house again that day. 
Appellant testified he had no contact with Jacoway on July 22, 2008.

ANALYSIS AND
CONCLUSION

According to Officer McHugh, Jacoway said appellant was
living in the house with her on Ruble Street.  Further, Jacoway’s next-door
neighbor told Officer McHugh that appellant was staying in the house on Ruble
Street.  Although Jacoway testified there had been no contact with appellant since
July 2007, the trial court could have chosen to believe the testimony of
Officer McHugh and found Jacoway’s testimony lacked credibility.  See Sharp,
708 S.W.2d at 614.  The conflict in the evidence was for the trial court, as
the trier of fact, to resolve.  See Garrett, 619 S.W.2d at 174. 
Accordingly, we find the evidence presented was sufficient to create a
reasonable belief that appellant came in contact with Jacoway.  Therefore, the
trial court did not abuse its discretion in revoking appellant’s community
supervision.  Appellant’s issue is overruled and the judgment of the trial
court is affirmed. 

 

PER CURIAM

 

Panel consists of Justices
Brown, Sullivan, and Christopher.

Do Not Publish — Tex. R. App. P. 47.2(b).